# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00875-COA

**MICHAEL R. SMITH, INDIVIDUALLY AND AS TRUSTEE OF THE MAGGIE LEGETT SMITH IRREVOCABLE TRUST**                    **APPELLANT**

**v.**

**MAGGIE MAE, L.P.; DAVID B. SMITH, CONSERVATOR OF MAGGIE MAE SMITH; DAVID B. SMITH, EXECUTOR OF THE ESTATE OF MAGGIE L. SMITH, DECEASED; AND DAVID B. SMITH, INDIVIDUALLY**                    **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/2014 |
| TRIAL JUDGE: | HON. DAN H. FAIRLY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES RAY MOZINGO |
| | HORACE HUNTER TWIFORD IV |
| ATTORNEYS FOR APPELLEES: | DAVID RINGER |
| | BRENTON MATTHEW CARTER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | CHANCELLOR FOUND LIMITED PARTNERSHIP AGREEMENT CONVEYED GENERAL PARTNERSHIP INTEREST TO APPELLEE, AND APPELLEE PROPERLY CONDUCTED BUSINESS AS CONSERVATOR |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 05/03/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Through a conservatorship proceeding, the parties have presented a dispute over the

ownership of a limited partnership, a trust, and certain assets. The Rankin County Chancery Court ruled that David R. Smith held a valid general-partner interest in Maggie Mae L.P., that Maggie Legett Smith ("Maggie") never ceased to serve as managing general partner of Maggie Mae L.P. and that David, as her conservator, could act on her behalf in his fiduciary capacity as managing general partner of Maggie Mae L.P. Michael R. Smith, individually and as trustee of the Maggie Legett Smith Irrevocable Trust (the "Trust") appeals. Finding error, we reverse the judgment of the chancellor. We render a judgment finding Michael became the general partner of Maggie Mae L.P. on February 1, 2002, when Maggie's conservatorship was established, and we remand for further proceedings consistent with this opinion.

## FACTS

### 1. The Trust

¶2. On November 20, 2000, Maggie created the Trust. Maggie included her sons, Michael and David in the trust agreement. The trust agreement named Maggie as the trustor, Michael as the trustee, and Michael and David as the primary beneficiaries. As trustee, Michael had the discretion to distribute the income and principal.

### 2. Maggie Mae L.P.

¶3. On November 22, 2000, Maggie and the Trust executed the Limited Partnership Agreement (the "LPA") of Maggie Mae L.P. Michael signed the LPA for the Trust. The LPA established the ownership of the Trust as follows: "[t]he Partners desire that Maggie Legett Smith be the sole General Partner and that all of the other Partners be Limited

Partners." Schedule B to the LPA indicated the partnership interest as follows:

| | |
|---|---|
| Maggie Legett Smith<br>General Partner | 33 1/3% |
| Maggie Legett Smith<br>Limited Partner | 33 1/3% |
| Michael R. Smith, Trustee<br>Limited Partner | 33 1/3% |
| TOTAL | 100% |

### 3. *Transfers of Partnership Interests and Assets*

¶4.    On December 29, 2000, Maggie executed a transfer of a portion of her general-partnership interest.  The transfer conveyed 1/3 of 1% to David as a new general partner.

¶5.    On January 31, 2001, David, representing himself as a general partner, sold a parcel of land (identified as "the Nissan property") owned by Maggie Mae L.P. to the Mississippi Economic Impact Authority for $186,000.  A warranty deed from Maggie Mae L.P., signed by "David Smith, General Partner," was executed and dated January 31, 2001.  David did not deposit the sale proceeds into a Maggie Mae L.P. bank account, and the proceeds have not been distributed according to the LPA.

¶6.    On September 19, 2001, David, as a general partner, entered into a contract for the sale of a second parcel of land (identified as "the Chisholm property") owned by Maggie Mae L.P.  David signed a contract with Charles Chisholm to sell the land for $32,000.  The parties, however, did not immediately execute the contract.

### PROCEDURAL HISTORY

¶7.    On January 4, 2002, David filed a petition to establish a conservatorship of Maggie

3

in the chancery court. The petition was joined by Maggie, and her grandsons, Nathan B. Smith and Allan L. Smith. It included affidavits from two doctors who concluded that Maggie had slight physical incapacities, but suffered from moderate dementia and short-term memory loss. The chancellor granted the petition and ordered the conservatorship on February 1, 2002. David was appointed conservator, and letters of conservatorship were issued on February 19, 2002.

¶8. On February 28, 2002, as conservator, David filed a petition to sell property and asked for the chancery court's approval of the sale of the Chisholm property. The petition included a legal description of the property, attached an appraisal of the property that valued it at $27,000, and asked the chancery court to ratify a contract for the sale of the property at a price of $32,000.

¶9. The petition indicated that Maggie did not own the property in her individual capacity. Instead, it stated that the property was owned by "Maggie Mae L.P." The petition further explained that Maggie "was a general partner," and she owned an "equitable interest as a limited partner in the Limited Partnership [of] 66 1/3%." The other owners were "Maggie Legett Smith Irrevocable Trust 33 1/3% [and] David B. Smith 1/3%." The petition also stated that the beneficiaries of the Trust were David and Michael. On March 1, 2002, the chancellor entered an order that granted the petition and approved the sale of the property.

¶10. On August 9, 2002, as conservator, David filed a petition for authority to remove Michael as the trustee of the Trust. David also requested that the chancery court order Michael to provide an accounting of the Trust's financial activity and appoint a certified

4

public accountant to serve as the trustee or co-trustee.

¶11.    Also, on August 9, 2002, as conservator, David filed a petition for authority to remove Michael as the trustee of the Miss Eva Elisee Legett Irrevocable Trust (Eva Trust).  This petition also asked that the chancery court order Michael to provide an accounting of the Eva Trust's financial activity and appoint a certified public accountant to serve as the trustee or co-trustee.

¶12.    On April 21, 2003, Michael, as the trustee of the Trust filed a complaint in the chancery court for the turnover of funds and for the determination of partnership interest. Michael asked the chancery court to determine the general and limited partners of Maggie Mae L.P., confirm that he is the "managing general partner" of Maggie Mae L.P., and require David to turn over proceeds from any sales of property owned by Maggie Mae L.P.  He also asked for other relief against David for his actions in the transfer of property under the conservatorship.

¶13.    On May 7, 2003, the chancellor consolidated all of the cases.   According to the record, the parties filed additional pleadings through June 11, 2003.  On February 22, 2008, Michael filed a suggestion of bankruptcy that advised the chancery court that he had filed a Chapter 13 bankruptcy proceeding on January 8, 2008, and the automatic stay was in effect.

¶14.    Maggie died on February 22, 2011.  The bankruptcy case eventually concluded, and the bankruptcy court remanded several issues to the chancery court.

¶15.    The trial was scheduled for May 21, 2014.  On that day, the parties and their counsel appeared and made arguments to the chancellor.  The chancellor ended the hearing with an

oral ruling.

¶16.   On June 16, 2014, the chancellor entered a seven page "Amended Judgment." The amended judgment was not a final judgment. Instead, the chancellor determined that a special master should be appointed and deferred ruling on twelve "issues." The chancery court did, however, rule:

> [T]he relief sought by Michael . . . of a declaration that David . . . was not a General Partner of Maggie Mae [L.P.] is denied, as the Court finds the terms of the said [LPA], including Section 1.2 (defining "Certificate" as the "Certificate of Limited Partnership" and any amendments made thereto time to time); Section 1.6 (referencing and contemplating successors to General Partners); Section 8.1 (stating that Maggie . . . was to serve as Managing General Partner until such time[,] and she "ceases to serve[,"] with the Court finding that Maggie . . . never ceased to serve as Managing General Partner); and Section 12.4 (the last unnumbered paragraph thereof contemplating that there may be more than one (1) General Partner), are such that the terms of the [LPA] made the appointment by Maggie . . . of David . . . as a General Partner a proper and valid appointment, as was done upon the execution by Maggie . . . of the Certification of Partnership Interest Transfers of Maggie Mae[] L.P. on December 29, 2000, with the transfer being further reflected in the Amended Schedule B to the [LPA], said Amended Schedule B having been executed by Maggie . . . on December 29, 2000.
>
> Independently and alternatively, the Court finds that under the laws of the State of Mississippi, both as to the general powers of conservators as provided for in Chapter 13 of Title 93 of the Mississippi Code of 1972, as amended, and as to specific powers of conservators of wards having partnership interests in a limited partnership as provide for in [s]ection 79-14-705 of the Mississippi Code of 1972, as amended, that David . . . validly served as General Partner of Maggie Mae [L.P.] in his capacity as Conservator of Maggie[.]

The chancellor also ruled "[t]he Court certifies this Judgment under Rule 54(b) of the Mississippi Rules of Civil Procedure."

¶17.   Michael appeals the judgment as trustee of the Trust.

**STANDARD OF REVIEW**

6

¶18. "An appellate court 'will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.'" *Daley v. Carlton*, 19 So. 3d 781, 783 (¶6) (Miss. Ct. App. 2009) (quoting *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss. 1990)). However, "[c]ontract interpretation is a question of law and is reviewed de novo." *Id.* (citing *Warwick v. Gautier Util. Dist.*, 738 So. 2d 212, 215 (¶8) (Miss. 1999)).

## ANALYSIS

¶19. Michael argues four issues:

1. Whether the lower court erred in concluding that David . . . held a valid general partnership interest in Maggie Mae[] L.P.

2. Whether the lower court erred in concluding that Maggie . . . never ceased to serve as Managing General Partner of Maggie Mae[] L.P., even after the [c]onservatorship was established.

3. Whether the lower court erred in concluding that David . . . could serve as Managing General Partner of Maggie Mae[] L.P., by way of his office as [c]onservator of Maggie . . . .

4. Whether David . . . had authority to sell partnership assets of Maggie Mae[] L.P.

Michael primarily disputes the chancellor's interpretation of the LPA. Therefore, we address these issues together.

¶20. First, Michael argues that the chancellor erred in his interpretation of the LPA and the Mississippi Uniform Limited Partnership Act (Act) when he determined that Maggie validly assigned a 1/3% general-partner interest to David. Michael claims that the LPA provided that limited partners cannot assign their interests, and the chancellor should have extended

7

this to the general partners. David responds that the lack of any specific provisions about general-partner interests means the Act applies.

¶21. The interpretation of a contract, such as the LPA, requires a three-part analysis:

> First, [this Court] look[s] to the "four corners" of the agreement and review[s] the actual language the parties used in their agreement. When the language of the contract is clear or unambiguous, [this Court] must effectuate the parties' intent. However, if the language of the contract is not so clear, [this Court] will, if possible, harmonize the provisions in accord with the parties' apparent intent. Next, if the parties' intent remains uncertain, [this Court] may discretionarily employ canons of contract construction. Finally, [this Court] may also consider parol or extrinsic evidence if necessary.

*Chapel Hill LLC v. SoilTech Consultants Inc.*, 112 So. 3d 1097, 1099 (¶10) (Miss. Ct. App. 2013) (quoting *Williams v. Williams*, 37 So. 3d 1196, 1200 (¶10) (Miss. Ct. App. 2009)).

¶22. The LPA did not have a specific clause that governed the assignment of general-partner interests or the addition of a new general partner. Michael points to the LPA, specifically Recital C, that provides "[t]he [p]artners desire that Maggie . . . be the sole [g]eneral [p]artner and that all of the other [p]artners be [l]imited [p]artners." Michael claims that this indicates the LPA does not contemplate any general partner other than Maggie or her successor.

¶23. Michael cites section 1.9 of the LPA for the definition of a partnership interest: "The '[p]artnership [i]nterests' are the relative interests of the [p]artners in the [p]artnership, as indicated in [s]chedule B attached hereto and incorporated in full by reference, as amended." Amended schedule B lists David as a general partner. However, Michael argues the amended schedule B is invalid. He claims that the amended schedule B must be filed with the Mississippi Secretary of State before taking effect. Section 1.2 of the LPA provided that

8

"[t]he '[c]ertificate' is the [c]ertificate of [l]imited [p]artnership filed with the Secretary of State of Mississippi on behalf of Maggie Mae[] L.P., as may be amended from time to time."

¶24.    While not in effect at the time the dispute arose, the current Act states that "[a] partnership agreement may not: . . . (3) Vary any requirement, procedure, or other provision of this act pertaining to: . . . (B) The Secretary of State, including provisions pertaining to records authorized or required to be delivered to the Secretary of State for filing under this act[.]"  Miss. Code Ann. § 79-14-105(c)(1)(3)(B) (Supp. 2015).  At the time of the dispute, the Act also stated:

> Notwithstanding the requirements of subsection (b) of this section, within thirty (30) days after the happening of any of the following events[,] an amendment to a certificate of limited partnership reflecting the occurrence of the event or events shall be delivered to the office of the Secretary of State for filing: (1) The admission of a new general partner[.]

Miss. Code Ann. § 79-14-202(c)(1) (Rev. 2013).

¶25.    The record does not indicate that amended schedule B was filed with the Secretary of State.[1]  We do not find an ambiguity in the LPA.  Indeed, section 1.2 of the LPA provided that "[t]he '[c]ertificate' is the [c]ertificate of [l]imited [p]artnership filed with the Secretary of State . . . on behalf of Maggie Mae[] L.P., as may be amended from time to time."  While the LPA allowed for amendments of the certificate, it also specifically provided that an amendment must be filed with the Secretary of State.

---

[1] David filed a motion to strike the original Certificate of Formation, which Michael attached to his brief.  However, the chancellor referred to a valid certificate in the transcript. Regardless, as our ruling turns on the lack of evidence of an amendment to the certificate rather than the certificate itself, we grant David's motion to strike the certificate attached to Michael's brief.

9

¶26.   Second, Michael argues that the chancellor erroneously found that David could properly serve as managing general partner of Maggie Mae L.P.  His claim is that the LPA provided that only Maggie or Michael could serve as managing general partner.  David responds that he could step into her role as managing general partner as Maggie's conservator.

¶27.   Under the contract-interpretation analysis, this Court first looks to the provisions of the LPA addressing the managing general partner.  Section 8.1 of the LPA stated:

> All of the business of the Partnership, including, but not limited to, decisions on all tax elections and the voting of any shares of stock owned by the Partnership, shall be under the exclusive management of the Managing General Partner. A General Partner (including the Managing General Partner) has, with respect to partnership assets, only those powers (and no others) granted to him by this Agreement.  In no event does a General Partner (including the Managing General Partner) retain or have any personal right regarding partnership assets. *MAGGIE . . . shall serve as Managing General Partner for the Partnership, and in the event that MAGGIE . . . ceases to serve as Managing General Partner for any reason, MICHAEL . . . shall serve as Managing General Partner*, and if he ceases to serve as Managing General Partner, then a Successor Managing General Partner shall be elected . . . .  All references herein to "General Partner" as it applies to managerial duties, discretions or decisions shall refer to the Managing General Partner. The Managing General Partner shall have the discretion and authority to delegate any duties or responsibilities to any or all of the other General Partner(s). The Limited Partners shall not participate in nor have any vote respecting the management of the business and operations of the Partnership. The Limited Partners shall have no authority to bind or act on behalf of the Partnership in any way. No Limited Partner shall take part in or interfere in any manner with the conduct or control of the Partnership.

(Emphasis added).

¶28.   Michael contends that Maggie ceased her role as managing general partner once the conservatorship began.  On the other hand, David argues that as conservator, he could

10

manage all of aspects of Maggie's business, including as managing general partner. However, "[t]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Daley*, 19 So. 3d at 783 (¶6). Therefore, this Court must determine if any ambiguity exists.

¶29. "An ambiguity is defined as a susceptibility to two reasonable interpretations." *Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1232 (¶10) (Miss. 2009) (quoting *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 811-12 (5th Cir. 1997)). The *Dalton* court elaborated:

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business.

*Id.* (citation omitted). Based on this definition, the provision appears ambiguous, as either David or Michael's interpretation is reasonable. Without a clear indication of when Maggie ceased to act as managing general partner, this Court "will attempt to ascertain intent by examining the language contained within the 'four corners' of the instrument in dispute . . . [as] [p]articular words should not control; rather, the entire instrument should be examined.'" *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990) (internal citations and citations omitted).

¶30. Section 2.4 sets forth the purposes of Maggie Mae L.P., and it expressly states that the partnership intends "to avoid guardianship or conservatorship in the management of assets[.]" Further, section 8.1 provides an agreed upon mechanism for Maggie's successor

11

when she can no longer serve. The LPA, when viewed as a whole, indicates that Maggie shall be the only managing general partner until she can no longer serve and her successor, Michael, steps into the role. Based on the express provisions and the construction of the LPA to avoid third-party interference, this Court finds that the parties clearly intended that a conservatorship of Maggie effectively ended her role as managing general partner. Therefore, this Court finds that the chancellor's ruling that David was the general partner was manifestly wrong and clearly erroneous. This Court reverses the chancellor's judgment finding David the proper general partner, and we render a judgment that Michael became managing general partner of Maggie Mae L.P., as of February 1, 2002, when the conservatorship was established over Maggie.

¶31. We remand this case to the chancery court to determine the proper accounting and distribution of Maggie Mae L.P. assets and other matters that may be necessary to resolve any remaining disputes. We decline to render a declaratory judgment that David lacked the authority to sell partnership assets and must turnover all partnership proceeds back to the partnership. Instead, the chancellor may consider these matters on remand.

¶32. **THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS REVERSED AND RENDERED IN PART; AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, FAIR AND GREENLEE, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**