GRIFFIS, P.J.,
FOR THE- COURT:
¶ 1. This appeal comes from the probate of the estate of James Oldrum Smith Jr. As part of the probate of the estate, a disputed issue arose as to the interpretation of a codicil that would impact the transfer of stock owned by the decedent in three corporations. The Warren County Chancery Court determined that the codicil was not ambiguous and did not allow for the consideration of extrinsic evidence. The appellants disagree and filed a timely appeal. We find reversible error and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
¶ 2. James Oldrum Smith Jr. (“Big J.O.”) was a successful businessman who lived in Warren County, Mississippi. He died on August 24, 2006. At the time of his death, he was survived by three children: James Oldrum Smith III (“Little J.O.”), Patrick Raymond Smith, and Lela Smith Flowers. Big J.O. also had one child that predeceased him, Jinx Peterson Smith. Jinx left three surviving children: Jinx Peterson Smith Jr., Christopher Stanton Smith, and Patricia Staffoi’d Smith.
¶ 3. On September 8, 2006, the Estate of J.O. Smith Jr. was opened in the chancery court. The last will and testament of Big J.O., dated November 10,1987, was admitted to probate. In addition, the three codicils executed by Big J.O. were admitted to probate: codicil 1 dated November 8, 1988; codicil 2 dated July 27, 2005; and codicil 3 dated December 12, 2005. At the time in controversy here, Harry Kenneth Lefoldt Jr. was the administrator of the estate.
¶4. The controversy before this Court concerns the interpretation of codicil 3. Big J.O. did not obtain the assistance of a lawyer in the preparation or execution of codicil 3. It was titled “Codicil # 3 to the Will of J.O. Smith, Jr. which Will is dated November 10,1987.” It read:
*1101 J.O. Smith, III will receive in the event of my death 41% of the shares that I own in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc.
Patrick Smith and Lela Smith Flowers will receive 39% of the stock that I own in Big River Shipbuilders, Inc. and Vicksburg Plant Food; and 29% of the stock of Yazoo River Towing, Inc. divided equally.
¶ 5. Big J.O. died on August 24, 2006. As of the date of his death, these companies had the following shareholder ownership:
[[Image here]]
¶ 6. On December 2, 2012, Lyn Smith, Jinx’s widow, filed a motion for construction of the codicil. This motion sought a determination of whether the codicil constituted a direct bequest, or whether the assets listed in the codicil went to the residual estate. On September 7, 2011, the chancellor ruled that the codicil was unambiguous and constituted a direct bequest of the assets to the named beneficiaries.
¶ 7. On August 13, 2014, Little J.O. filed a “Motion for Construction of 3[rd] Codicil.”[1] In this motion, Little J.O. argued that, in codicil 3, Big J.O. intended for Little J.O. to receive 41% of the shares of each corporation and not just 40% of the shares owned by Big J.O. Little J.O. also argued that Big J.O. did not intend for any of the shares to be left to his grandchildren.
¶ 8. On February 28, 2014, Administrator Lefoldt filed a response to Little J.O.’s motion. This response did not take a position, but asked the chancellor for a decision and a certified final judgment under Mississippi Rule of Civil Procedure 54(b), so he could take the appropriate action.
¶ 9. On March 4, 2014, Patrick joined Little J.O.’s motion and attached the court’s earlier September 7, 2011 judgment and the December 2, 2010 motion for construction of the codicil filed by Christy Noah, as the guardian of the estate of Jinx Peterson Smith, and Christopher Stanton Smith.
¶ 10. On March 7, 2014, Trustmark Bank filed a “Memo on Practical and Legal Issues Related to Codicil 3.” Trustmark argued that the distribution of shares did not make sense without the inclusion of extrinsic evidence.
*1102 ¶ 11. The chancellor held a hearing on November 14, 2014. Counsel appeared and were given an opportunity to examine witnesses. Then, on January 16, 2015, the chancellor executed a memorandum opinion and order and Rule 54(b) judgment. The chancellor ruled that codicil 3 was unambiguous and allocated the shares as follows:[2]
[[Image here]]
The chancellor also certified the judgment under Rule 54(b). Little J.O. and Patrick appeal.[3]
STANDARD OF REVIEW
¶ 12. “A chancellor’s factual findings will not be disturbed if supported by substantial evidence, but if an erroneous legal standard is applied, appellate review is de novo.” In re Estate of Black, 135 So.3d 181, 182-83 (¶ 4) (Miss.Ct.App.2013) (citing In re Estate of Langston, 57 So.3d 618, 619-20 (¶ 6) (Miss.2011)). Further, “[w]hen reviewing a chancellor’s legal findings, particularly involving the interpretation or construction of a will, this Court will apply a de novo standard of review.” In re Estate of Saucier, 908 So.2d 883, 886 (¶5) (Miss.Ct.App.2005) (quoting In re Last Will & Testament of Carney, 758 So.2d 1017, 1019 (¶ 8) (Miss.2000)).
ANALYSIS
¶ 13. The issue for this Court is whether the chancellor improperly excluded extrinsic evidence of Big J.O.’s intent in construing the codicil. Little J.O. and Patrick argue that the codicil contained a latent ambiguity. Lela argues there was no ambiguity.
¶ 14. “A trial court begins its review [by] looking first within the ‘four corners’ of the document at issue. If there exists no ambiguity within the writing, then further analysis is proscribed.” Estate of Regan v. Estate of LeBlanc, 179 So.3d 1155, 1159 (¶ 12) (Miss.Ct.App.2015) (quoting DeJean v. DeJean, 982 So.2d 443, 448 (¶ 10) (Miss.Ct.App.2007)). “Parol evidence may only be considered if the language of the will itself can be construed to result in more than one interpretation as to the disposition of property.” Id. at (¶ 13) (quoting Black, 135 So.3d at 183 (¶ 5)). There *1103 fore, we must first determine if an ambiguity exits.
¶ 15. There is a “patent ambiguity” where a will or codicil is ambiguous on its face. Robert A. Weems, Wills and Administration of Estates in Mississippi § 9:9 (3d ed. 2003). Here, the codicil indicates the names of the companies, the percentage of distribution of each company, and the beneficiaries. We agree with the chancellor that there is no patent ambiguity.
¶ 16. However, a latent ambiguity occurs if the testator’s intent remains uncertain when the language of the will is applied to the external facts. Id. Little J.O. and Patrick point to the third bequest in the codicil to demonstrate the latent ambiguity. There, the codicil purports to bequeath 29% of the Yazoo River Towing shares without the qualifying language of “shares that I own” that is in the first two bequests. This omission, according to Little J.O, and Patrick, constitutes a latent ambiguity, which required the chancellor to consider the parol evidence presented at the hearing. We agree.
¶ 17. When we consider the words used in the codicil along with the external facts, we conclude that Big J.O.’s intent in the codicil is unclear. At the time the codicil was executed and as of Big J.O.’s death, the companies’ corporate ownership was as follows:
[[Image here]]
¶ 18. If we apply the codicil’s language according to the two different interpretations, two different distributions occur. Under Lela’s interpretation, the ownership would be as follows:
*1104 [[Image here]]
It seems illogical that Big J.O. would execute a codicil to bequeath his shares in his companies and intend to leave a portion to his residual estate or his predeceased children’s heirs and not include them in the codicil.
¶ 19. Under Little J.O. and Patrick s m-terpretation, the ownership would be as follows:
[[Image here]]
Under this interpretation, Little J.O. would have 51% of each of the corporations, giving him a controlling stake in each company. It would also give the remaining shares in each corporation to Patrick and Lela without leaving any remaining shares to the residual estate,
*1105 ¶20. Based on these different interpretations, bequest three could either mean that Big-J.O. intended to convey the shares he owned, or that he intended distribution of the total percentage of the company. “An ambiguity is defined as a susceptibility to two reasonable interpretations.” Dalton v. Cellular S. Inc., 20 So.3d 1227, 1232 (¶ 10) (Miss.2009) (quoting Am. Guar. & Liab. Ins. v. 1906 Co., 129 F.3d 802, 811-12 (5th Cir.1997)). Though the inconsistent language appears only in the third bequest, the effect of the two interpretations renders the entire codicil ambiguous.
¶ 21. “[I]f an examination of the will shows the testator’s intention to be unclear, the court will examine the facts and circumstances surrounding the testator at the time of making the will, and extrinsic evidence may be admissible to ascertain the testator’s intention.” 9 Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law § 75:88 (2002). Because there are two reasonable interpretations, the codicil is ambiguous, and the chancellor should have considered the extrinsic evidence. Therefore, this Court reverses the decision of the chancellor and remands this case for further proceedings.
¶ 22. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LELA SMITH FLOWERS.
LEE, C.J., BARNES, ISHEE AND CARLTON, JJ., CONCUR. WILSON, J, CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. FAIR, JAMES AND GREENLEE, JJ., NOT PARTICIPATING.

. At the time this motion was filed, there were eighteen attorneys listed in the certificate of service. This is to note the extent of the prior matters considered and the complexity of the estate.

. This chart only reflects this distribution of Big J.O.’s shares to Little J.O., Lela, and Patrick. It does not include the shares owned by Little J.O. and Jinx's estate prior to Big J.O.’s death.

. While Lyn Smith and Lela Smith Flowers are both appellees in the action, Lyn filed a "confession of appeal” on November 25, 2015, in which she confessed that the chancellor had erred. Therefore, only Lela argues in favor of the chancellor’s decision on appeal.