# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00177-COA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF PATRICIA HINES NEILL, DECEASED: JOHN H. HINES | APPELLANT |

v.

| | |
|---|---|
| JERRY GLEN EARLS | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 01/15/2021 |
| TRIAL JUDGE: | HON. TIFFANY PIAZZA GROVE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | J. PEYTON RANDOLPH II RICK D. PATT |
| ATTORNEY FOR APPELLEE: | H. BYRON CARTER III |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 06/28/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, J., FOR THE COURT:**

¶1. John Hines, as the executor for the estate of his sister, Patricia Hines Neill, appeals from the Hinds County Chancery Court's order instructing him to revise an "Executor's Deed" which provided for the transfer of Neill's property. Specifically, the order required Hines to incorporate additional parcels of land to reflect the conveyance of a larger allocation of Neill's property to Jerry Glen Earls based upon Neill's will. Hines claims that the chancery court erred (1) by applying an erroneous legal standard when it interpreted the terms of the will as used by the testator; (2) by concluding that the testator intended to specifically devise

all four pieces of property described in a "Corrected Warranty Deed" to Earls; and (3) by disregarding the explicit language of the will that included specific bequests to Hines and a residuary clause naming Hines as the beneficiary. Upon finding that the chancery court erred in its application of the law when it construed the distribution of property at issue, we reverse and remand this case for further determination and to allow the parties to provide extrinsic evidence to support their arguments.

## FACTS AND PROCEDURAL HISTORY

¶2. Patricia Hines Neill died on September 15, 2018, leaving a last will and testament naming her brother, John Hines, as executor of her estate, and devising certain real property to Hines and certain real property to her friend Jerry Glen Earls. Hines petitioned to probate Neill's will, and estate proceedings commenced. On October 31, 2019, the chancery court entered its final order closing Neill's estate and distributing her assets. Relevant to this appeal, the court's order instructed Hines, as executor, to distribute Neill's property and specifically stated:

> Pursuant to the said Last Will and Testament, Jerry Earls shall additionally receive the following:
>
> . . . .
>
> b.     A house of Decedent situated at 216 Carpenter Street, in
>        Utica, Hinds County, Mississippi, and the lot upon which
>        the residence is situated[.]

¶3. Pursuant to the court's order, Hines had a deed prepared (the Executor's Deed) conveying certain real property from Neill's estate to Earls as follows:

> Beginning 432 feet fro[m] the North East corner of S.B. Huchins lot, formerly

2

known as Mrs. Carrie Moore lot, on the Carpenter Road opposite the Public
school house, running thence South 200 feet, thence West 312 feet, thence
North 200 feet, thence East 312 feet to place of beginning commonly known
as the Breeden House. It is intended to convey only that house and house lot
known as the "Breeden House[.]"

The Executor's Deed was filed on December 10, 2019, and was subsequently provided to
Earls's attorney on January 9, 2020. After reviewing the contents of the Executor's Deed,
Earls's attorney contacted Hines's attorneys and alleged that there was an issue with the real
property description contained in the Executor's Deed.

¶4.     On February 14, 2020, Earls filed a motion to correct the error in the Executor's Deed,
claiming Hines had misconstrued the terms in Neill's will and had failed to include all the
property that was devised to him. Earls argued that he was entitled to receive the entirety of
the "Breeden property" that had been conveyed from the Breedens to the Neills on July 14,
1987, by a deed that was titled "Corrected Warranty Deed" and consisted of four separately
described parcels of property.[1] Hines then filed his response to Earls's motion and contended

---

[1] For clarity, we briefly explain the context of the various deeds involved in the transfer of the property at issue. On June 29, 1987, the Breedens conveyed real property to the Neills by a document titled "Warranty Deed." This June 29, 1987 deed conveyed property described as "Parcel I" and "Parcel II." Parcel I's description detailed the boundary lines for two lots. Parcel II then described boundaries for a different tract of land. Shortly thereafter, on July 14, 1987, the Breedens again conveyed property to the Neills, but this deed was titled "Corrected Warranty Deed." This July 14, 1987 deed purportedly transferred four parcels of property to the Neills. Notably, this second deed begins by describing the same property outlined in the June 29, 1987 deed. But the July 14, 1987 deed splits the two described lots (defined collectively as "Parcel I") on June 29, 1987, into a separate Parcel I and Parcel II. Further comparison of the deeds shows that Parcel III of the July 14, 1987 deed is identical to the property described as Parcel II in the June 29, 1987 deed. But the July 14, 1987 deed provides for the conveyance of a fourth parcel, and the description of property under Parcel IV is not found within the June 29, 1987 deed. Thus, it can be surmised that the June 29, 1987 document was the "original" Warranty Deed from the Breedens, and the July 14, 1987 document was a "Corrected Warranty Deed" as listed.

3

that the Executor's Deed appropriately conveyed the property in accordance with the language of the will and the court's final order. Hines argued that the devise to Earls at issue in the will provided a definite description of the property as 216 Carpenter Street. He claimed that this address was an accurate description that corresponded with one of the lots listed in the Corrected Warranty Deed. Thus, Hines contended that because the devise provided an accurate description matching one lot, Earls was only entitled to that singular lot, regardless of whether the lot was a part of a bigger piece of property. Hines further alleged that Earls's claim of error was flawed based upon other specific devises Neill had made in the will. Hines stated that the will specifically devised property at 226 Carpenter Street and 227 Carpenter Street to him and that those two property descriptions corresponded with the lots outlined in the Corrected Warranty Deed. Similarly, he noted that Earls was specifically devised property at 225 Carpenter Street, which Hines alleged was one of the lots described in the Corrected Warranty Deed as well.[2] Lastly, Hines claimed that he was entitled to the remaining property that was not otherwise specifically devised since he was the beneficiary of the residuary clause in Neill's will.

¶5.     Upon the chancery court's request to further brief the issues presented, Hines filed his supplemental response to Earls's motion. Hines asserted that the Corrected Warranty Deed from the Breedens conveying the property at issue to the Neills described the boundaries of

---

[2] Hines also argued that Earls's motion to correct the error in the Executor's Deed was untimely filed, but that issue was not raised on appeal. The chancery court found that Earls's motion was timely filed because it was not a motion to alter or amend the court's judgment entered on October 31, 2019, but instead sought a correction of the Executor's Deed issued by Hines in fulfillment of the court's judgment.

distinctly separate lots. He then elaborated that the Executor's Deed conveyed only one of the lots because the location of the house at the stated address of 216 Carpenter Street corresponded to the property described as Parcel 1 exclusively. Therefore, Hines urged that the Executor's Deed satisfactorily conveyed to Earls the real property devised to him in the will. Earls subsequently filed his reply, stating that the will had identified each piece of property Neill had owned and distributed it particularly, indicating that Neill did not intend for any real property to pass through the will's residuary clause. Earls also insisted that distributing the entirety of the property in the Corrected Warranty Deed to him would not overlap other bequests to Hines in the will, as Hines had claimed.

¶6. On January 15, 2021, the chancery court entered an order ruling on Earls's motion to correct the alleged error in the Executor's Deed. The court began by focusing its analysis on the testator's intent, noting that the court first must look to the four corners of the will to ascertain Neill's intent. The court stated that the will was detailed and specific and found "that there was no real property owned by Decedent [Neill] that was not named, described and specifically devised within the Will. No real property was left unidentified or subject to the Will's residuary clause." Based on this finding, the court concluded that the language of the will was unambiguous. Thus, the court initially determined that "the Will deeded to Earls the entirety of the 'Breeden House' property, as originally conveyed by Corrected Warranty Deed from the Breedens to the Neills."

¶7. Following its initial conclusion, the chancery court proceeded to discuss the issue in the alternative under the premise that the will's language was ambiguous. The court

immediately turned to the rules of construction from the outset of this discussion and attempted to glean the construction of the ambiguous language that was most consistent with Neill's intent. Without a hearing or receiving additional parol evidence, the court surmised that the Neills had used the lots as one whole piece of property from the date of purchase. The court also stated that the Hinds County Tax Assessor had combined the four parcels described in the Corrected Warranty Deed into one tax parcel when the Neills recorded the Corrected Warranty Deed from the Breedens. These findings led the court to conclude that "the construction most consistent with the intention of the testator [Neill] would be to treat the language 'the lot upon which the residence is situated' to include the entirety of the property deeded from the Breedens to the Neills" in the Corrected Warranty Deed. The court further stated, "The same is the only way to ensure the fulfillment of the clear and obvious intentions of the testator." Based on this conclusion, the court granted Earls's motion to correct the Executor's Deed and ordered Hines to prepare a deed conveying the entirety of the property described in the Corrected Warranty Deed to Earls.[3] Aggrieved by the chancery court's order, Hines appeals.

## STANDARD OF REVIEW

¶8.     "A chancellor's factual findings will not be disturbed if supported by substantial evidence, but if an erroneous legal standard is applied, appellate review is de novo." *In re Est. of Smith v. Flowers*, 201 So. 3d 1099, 1102 (¶12) (Miss. Ct. App. 2016). Further,

---

[3] The court stated, "A plain reading of the Will demonstrates that the Decedent intentionally and specifically bequeathed each individual piece of real property owned by her."

"[w]hen reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, this Court will apply a de novo standard of review." *Id*.

## DISCUSSION

¶9.    We find that the chancery court erroneously applied the pertinent legal standard in reaching its conclusion and that the court's factual findings are not supported by substantial evidence based on the existing record.

### I.    The chancery court erroneously applied the pertinent legal standard.

¶10.    To properly construe the distributions provided for in a will, "we must first determine if an ambiguity exi[st]s" in the testator's devise. *Id*. at (¶14). A will is unambiguous "[i]f the terms of [the] will are plain . . ., taking the whole instrument into consideration," and "the language of [the] will is clear." *Carlisle v. Carlisle's Est.*, 252 So. 2d 894, 895 (Miss. 1971). If the language used in a devise "only allows one interpretation as to how the testator's property is distributed, the will is unambiguous[.]" *In re Est. of Black*, 135 So. 3d 181, 183 (¶5) (Miss. Ct. App. 2013). When a will is found to be unambiguous, the "Court is limited to the 'four corners' of the will itself." *Est. of Blount v. Papps*, 611 So. 2d 862, 866 (Miss. 1992).

¶11.    But if "the language of the will itself can be construed to result in more than one interpretation as to the disposition of property[,]" the will is ambiguous. *Est. of Regan v. Est. of LeBlanc*, 179 So. 3d 1155, 1159 (¶13) (Miss. Ct. App. 2015).[4] There are two types of

---

[4] "An 'ambiguous' word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire" document. *Smith v. Maggie Mae L.P.*, 225 So. 3d 1243, 1250 (¶29) (Miss. Ct. App.

ambiguities that may arise in a will. First, a patent ambiguity occurs when "a will or codicil is ambiguous on its face"; it is a patent ambiguity. *Smith*, 201 So. 3d at 1103 (¶15). Such as when "the words may be vague or confusing, or one provision may be in conflict with another." Robert A. Weems, *Ambiguity, Wills and Administration of Estates in Mississippi* § 9:9 (3d ed. Updated Jan. 2022). The second type, a latent ambiguity, arises "where the writing on its face appears certain, but the ambiguity is introduced by some matter out[side] of the instrument[.]" *Peacher v. Strauss*, 47 Miss. 353, 354 (1872). Said differently, "a latent ambiguity occurs" where the devise of property is unclear or "remains uncertain when the language of the will is applied to the external facts" surrounding the testator. *Est. of Smith*, 201 So. 3d at 1102 (¶16). A will may contain a latent ambiguity if the terms of the devise could reasonably be interpreted[5] to "apply to more than one item of property" or more than one beneficiary "when the language of the will is applied to [the] external facts" of the testator. *Ross v. Brasell*, 511 So. 2d 492, 495 (Miss. 1987); *accord. Est. of Smith*, 201 So. 3d at 1103 (¶16). Extrinsic evidence, or "[p]arol evidence[,] may only be considered if the language of the will itself can be construed to result in more than one interpretation as to the disposition of property." *Est. of Smith*, 201 So. 3d at 1102 (¶16).

¶12.    Earls's motion he filed with the chancery court requested relief based entirely on the contents of the Corrected Warranty Deed. He alleged that the devise of the "house situated

---

2016). However, an ambiguity arises only if the terms are "susceptib[le] to two *reasonable* interpretations." *Est. of Smith*, 201 So. 3d at 1105 (¶20) (emphasis added).

    [5] *See Maggie Mae L.P.*, 225 So. 3d at 1248 (¶21); *see also Est. of Smith*, 201 So. 3d at 1102 (¶16).

at 216 Carpenter Street . . . and the lot upon which the residence is situated" provided for in the will was meant to devise the entirety of the property contained in the Corrected Warranty Deed. The Corrected Warranty Deed Earls presented was a separate document that was not attached as part of the will, nor was it incorporated into the language of the will. Thus, for the purposes of construing the provisions in the will, the Corrected Warranty Deed is extrinsic evidence.

¶13. The chancery court initially determined that the language in the will was unambiguous. Although the court's order did not explicitly provide the basis for its determination, it found that the "unambiguous language" in the disputed provision of "the Will deeded to Earls the entirety of the 'Breeden House' property, originally conveyed by Corrected Warranty Deed[.]" Being that it was a document not contained within the four corners of the will, the Corrected Warranty Deed was therefore extrinsic evidence in this matter. The chancery court erroneously concluded that the will's language was unambiguous when the court considered the parol evidence of the Corrected Warranty Deed. *Est. of Regan*, 179 So. 3d at 1159 (¶13). If the language at issue in this provision was unambiguous, the court would have been "limited to the 'four corners' of the will itself" and would have been prevented from considering the Corrected Warranty Deed. *Est. of Blount*, 611 So. 2d at 866.

¶14. The will's provision in dispute here uses a specific address and a common name to describe the devised property and appears certain on its face. But a latent ambiguity arises when the descriptive terms used in the devise are applied to the property Neill owned, as shown by the facts surrounding the Corrected Warranty Deed. The devise at issue is

reasonably susceptible to two different interpretations. *See Est. of Smith*, 201 So. 3d at 1105 (¶20) ("An ambiguity is defined as a susceptibility to two reasonable interpretations."). In one respect, it is reasonable to interpret the provision here as devising the house located at 216 Carpenter Street and the tract of land that encompasses the house identified as 216 Carpenter Street. Alternatively, because "Breeden" is included in the will's language, it is reasonable to interpret the provision as devising the house conveyed to the Neills from the Breedens and the property associated with that conveyance from the Breedens. Thus, we find that the language of this particular devise in the will is ambiguous.

## II.     The chancery court's factual findings are not supported by substantial evidence.

¶15.    Following the chancery court's initial conclusion that the language was unambiguous, the court proceeded to analyze Neill's intent and construct the language of the devise under the alternative premise that the language was ambiguous.

¶16.    "[W]here the language of the will could apply to more than one item of property, parol evidence is admissible to determine which property the testator intended to bequeath." *Ross*, 511 So. 2d at 495; *see also Keeley v. Adams*, 149 Miss. 201, 115 So. 344, 345 (1928) ("[P]arol testimony is admissible to show . . . what property [the testator] owned, in order to properly interpret and apply to the language of the will.").[6] When a latent ambiguity arises,

---

[6] It has been stated that

> If the terms of a will are plain and unambiguous, taking the whole instrument into consideration, the court will give them their legal significance; but if, on an examination of the entire will, the testator's meaning is doubtful, the facts and circumstances surrounding the testator at the time of making the will, and his relation to the parties in interest, will be looked to, to determine whether

10

"the court will examine the facts and circumstances surrounding the testator at the time of making the will, and extrinsic evidence may be admissible to ascertain the testator's intention." *Est. of Smith*, 201 So. 3d at 1105 (¶20).

¶17. The partial parol evidence presented to the chancery court included the Executor's Deed, the original warranty deed from the Breedens to the Neills, the Corrected Warranty Deed, and a copy of the Hinds County Tax Assessor's map showing the original tract of land and a map of the parcels according to the Executor's Deed. In determining the property Neill intended to devise in light of this evidence, the court made several findings of fact, including (1) the property was consistently treated as a single parcel by the tax authorities, and (2) the property was consistently treated as a single parcel by the Neills.

¶18. Without consideration of further parol evidence, the record does not provide sufficient insight as to the Hinds County Tax Assessor's actions regarding the Neill's property other than Earls's bare assertions. For example, the maps submitted by Earls are not clear on their face, without more, as to whether the property was consistently treated as one parcel. The copy of the map with the plotted lines showing separate parcels includes handwritten notes and typed numbers. In addition, the subsequent plotted map identifies a tract of land with a different tax number of 4698-742-000 encompassed within the area of property shown in the original map as being tax number 4968-709-000. Thus, without more, it is not clear how or

the terms in question were used in their legal sense; and extrinsic evidence is admissible to clear up the ambiguity[.]

*Carlisle*, 252 So. 2d at 895 (internal quotation marks omitted) (quoting *Strickland v. Delta Inv. Co.*, 163 Miss. 772, 137 So. 734, 736 (1931)).

11

if the taxing authorities treated the property as one single parcel based on the evidence in the record. As a result, the chancery court's finding was not supported by substantial evidence.

¶19. After reviewing the record in its present form, we cannot find sufficient evidence supporting a determination that the property was consistently treated as one parcel by the Neills. Neither party offered any evidence as to how Neill utilized or divided the property during her lifetime. There is no evidence that affirmatively shows Neill used all four of the parcels in connection with each other or separated them in some manner. Therefore, the chancery court's alternate findings of fact predicated upon a consideration of the limited parol evidence before it were not supported by substantial evidence.

## CONCLUSION

¶20. We find the language of the devise at issue is ambiguous, and the chancery court's construction of the distribution of property is not supported by substantial evidence. We further find that the evidentiary record as it stands is insufficient to determine the intent of the testator; thus, we reverse the order and remand this case for further determination and to allow the parties to provide additional extrinsic evidence of the testator's intent.

¶21. **REVERSED AND REMANDED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ., CONCUR. LAWRENCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., NOT PARTICIPATING.**

12